## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JAMES D. KIMMONS,**
      **Petitioner,**

**v.**                                        **Case No.  3:04cv166/MCR/MD**

**JAMES R. MCDONOUGH,**
      **Respondent.**

_____

### REPORT AND RECOMMENDATION

      **Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 10), providing relevant portions of the state court record (doc. 11).  Petitioner has replied (doc. 14).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY[1]

On January 30, 1999, petitioner and two confederates, Joseph Lowery and Jason Owens, were doing drugs and drinking beer.  They decided they needed money, so they drove (during daylight) in petitioner's truck to case a neighborhood, selecting a house on Foxglove Street in Milton, Florida. Owens got out and knocked on the door to confirm that there was no one home.  Owens then drove the truck around for twenty minutes or so while petitioner and Lowery entered the house through a rear window.  When Owens picked them up, petitioner had a handgun he had stolen from the house, and he and Lowery also had some tennis shoes, watches, jewelry and cash.  Owens was the state's star witness at trial. He admitted that he was "messed up" on beer and drugs that day, but remembered what happened.  He also admitted that he was testifying pursuant to a plea agreement. (Doc. 11, ex. B, pp. 22-50).[2]

Jawanna Owens, the mother of Owens and Lowery, testified that petitioner showed up at her house with two watches and a handgun, but she would not let him stay because she was a convicted felon and did not allow weapons in her home (ex. B, pp. 85-86).  Petitioner presented two alibi witnesses, his brother and his girlfriend, who testified that the three of them were fishing all day the day of the burglary.

The jury found petitioner guilty of (1) armed burglary of a dwelling, (2) grand theft of a firearm, and (2) grand theft (ex. A).  On the armed burglary count he was sentenced to life in prison without parole under Florida's Prison Releasee Reoffender Act, Fla. Stat. § 775.082(9)(a)1a.  He received concurrent five year terms of imprisonment on the other counts (ex. G).  Petitioner appealed his conviction and sentence without success.  *Kimmons v. State*, 818 So.2d 504 (Fla. 1st Dist. Ct. App. 2002) (Table) (copy at ex. F).  He then filed a timely motion for post-conviction relief

---

[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. Martin v. State of Alabama, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[2]Hereafter all references to exhibits will be to doc. 11 unless otherwise noted.

pursuant to Fla.R.Crim.P. 3.850 in which he raised four of the five grounds he raises here (ex. G).  The Rule 3.850 court denied the motion in a written order but without a hearing (ex. H).  The denial order was affirmed on appeal.  *Kimmons v. State*, 871 So.2d 210 (Fla. 1st Dist. Ct. App. 2004) (Table) (copy at ex. J).  On July 28, 2003 petitioner filed a petition for writ of habeas corpus in the appellate court claiming ineffective assistance of appellate counsel (doc. 14, ex. B).  The petition was denied without written opinion on August 29, 2003.  *Kimmons v. State*, 854 So.2d 197 (Fla. 1st Dist. Ct. App. 2003) (Table) (copy at doc. 14, ex. B).  Petitioner then brought this federal habeas petition.  Respondent concedes that the petition is timely, and that all claims raised here were properly exhausted (doc. 10, pp. 5, 12, 14, 21, 29).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The

appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-

20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.  *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.  *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be

presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF

1.   Ineffective Assistance Of Counsel.

Four of petitioner's five grounds for relief involve claims of ineffective assistance of counsel.

A.   Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

We must avoid second-guessing counsel's performance:  "[I]t does not

> follow that any counsel who takes an approach we would not have
> chosen is guilty of rendering ineffective assistance."  *Waters* [*v.
> Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a
> particular defense ultimately proved to be unsuccessful demonstrate
> ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

B.  **Federal Review of State Court Decision**

i.  Ineffective assistance of counsel - failure to strike biased juror. (Ground 1 of petition).

For his first ground for relief petitioner faults his attorney for failing to strike an allegedly biased juror.  He contends that juror Jennifer Jurey was biased because

she had a close relationship with an investigating detective, knew the prosecuting attorney, and worked for William Wade, petitioner's previous assistant public defender, with whom petitioner apparently had a disagreement.  Petitioner says that counsel should have struck Ms. Jurey, or moved for additional peremptory strikes.

Jury selection took place on Monday, February 21, 1999.  During the prosecution's *voir dire* Jennifer Jurey disclosed that she knew an Deputy Sheriff Larry Tynes; that she had a family member or acquaintance who was prosecuted by the State Attorney's Office; that she "kn[e]w of" the prosecuting attorney; and that she worked for Bill Wade, who was an assistant public defender (ex. H, pp. 185, 197, 202, 207).  When counsel came to the bench for jury selection (with defendant present), Ms. Jurey's name was drawn.  Defense counsel moved to strike her for cause (ex. H, pp. 215, 218).  Ms. Jurey was then called to the bench and questioned by the court.  She said that Deputy Tynes was a family friend (her mother and his mother were friends), but that she would not give his testimony any greater credibility because she knew him (ex. H, pp. 219-220).  The court refused to strike her for cause, and counsel withdrew his motion (ex. H, p. 220).  Counsel had ten peremptory strikes available, but used only one (ex. H, pp. 220-225).

The jurors were dismissed to return for the trial on Thursday, February 24.  However, before the jury was sworn that morning the following discussion took place:

> THE COURT:   We're here in the case of State of Florida versus James Daniel Kimmons, Case Number 99-114.  On an Amended Information charging three counts.
>
> I just need to disclose to counsel.  My secretary informed me this morning that somebody from a local newspaper, *The Press Gazette*, called up and said that they wanted to attend the trial because somebody had raised a question about one of the jurors knowing some of the parties or the witnesses.  And I just need to get that –
>
> MISS HELGESEN (prosecutor):    I know that one of our jurors, Your Honor, mentioned that Larry Tynes was a family friend.  Larry Tynes is not going to be testifying today.
>
> THE COURT:   Okay.

**MR. GARRETSON (defense counsel):     And  that's the girl that works for –**

**MISS HELGESEN:      For Bill Wade.**

**MR. GARRETSON:     Bill Wade.**

**MISS HELGESEN:      And  that  may  be  another  thing.   She does work for Bill Wade.  She's fairly new, I think, in his office.  And I'd never even seen her face until jury selection.**

**THE DEFENDANT:      It was me.  It bothered me is what it was.**

**THE COURT:  Well,  you  were  up  at  the  bench  when  we  went through jury selection and participated fully.**

**MR. GARRETSON:      Tynes is not going to testify, but we have two alternatives if you are uncomfortable –**

**THE DEFENDANT:      I just, she knows Larry Tynes.  But he ain't testifying.  I just, if he is a friend of the family I did not figure it was fair.**

**THE COURT:     Well, he is not testifying.**

**MISS HELGESEN:      He is not even going to be here today, Your Honor.  I took that into consideration.**

**THE DEFENDANT:      And she works across the street.  And that's the problem that me and William [Wade] had that time in the courtroom about the driving on suspended, and you all got the conviction on.  And they gave a conviction for the six hours time served where I bonded out.  And I was just uncomfortable.**

**THE COURT:     Okay.  And now apparently she just started working for Bill Wade's office.**

**MR. GARRETSON:     Like a month, I understand.**

**MISS HELGESEN:      She is brand spanking new.**

**THE COURT:     And the fact that Officer Tynes is not going to testify, is there anything that we need to raise or discuss about this now?**

**THE DEFENDANT:      My lawyer said it was all right.**

THE COURT:   What?

THE DEFENDANT:     My lawyer said it was all right. Mr. Tynes ain't testifying.  And, I mean, *I'm still a little uncomfortable with it myself, but it will be all right*.

THE COURT:   Well, now is the time to decide.

MR. GARRETSON:     Well, I mean, if you are not comfortable, I mean, I can ask the judge to put -- We have two alternates.

THE *DEFENDANT:     You know.  I would like that if that is possible*.

THE COURT:  I don't think that we -- yes, we do have two alternates.  The first alternate is Mary Dudley, who is retired, 65 years old.

MR. GARRETSON:     Yes.

(Defense counsel confers with client)

MR. GARRETSON:     It will be fine to keep her.

MISS HELGESEN:     Your Honor, I don't see her on my sheet.  Do you know the seating chart number?

MR. GARRETSON:     Yes.  B-1.

MISS HELGESEN:     There she is.

MR. GARRETSON:     Your Honor, Mr. Kimmons says that he feels more comfortable.

THE DEFENDANT:     *I just wanted to bring it up.*

THE COURT:   That's fine.  I am just trying to air it out.  And this is very serious –

THE DEFENDANT:     *That is very fine that she is on there, and, you know, this is a serious matter and I just wanted, to just bring it up.*

THE COURT:   Exactly.  I'm not upset or anything.  And it doesn't bother me.  And this is a very, very important matter.  And if you are convicted with what you are charged with –

THE DEFENDANT:    Yes, Sir.

THE COURT:   It's a long time.  And I want to make sure it is done right, and I want to answer your questions now, because now is the time to answer it.

THE DEFENDANT:    Well, I'm just having a lot of concerns because the newspapers and all, I got all of the back issues and everything.  And about, I got pictures, photographs and I've had taken in here.  That the jury are -- Joseph Lowery ain't being called as a witness, but they don't know Joseph Lowery.  And I'm uncomfortable because nobody knows him out of all those people sitting in there.  But you walk in -- I got the pictures right here.  And you walk in Wal-mart and you walk in Tom Thumb, you walk into the bank, and his face is on the front.

THE COURT:   He is not testifying, he is not here because he escaped.

MISS HELGESEN:  Only in my dreams is he coming to trial today, Your Honor.

THE DEFENDANT:    Yeah.  And I got another paper in here where they said me, him, and that guy, the Owens boy -- actually I participated in an armed home invasion and held them people hostage.  I got it in there too.  And I know these people from around here and they read the paper.  And it's just, I am real uncomfortable with that.  That's what it was.

THE COURT:   Okay.

THE DEFENDANT:    I just, I ain't trying to make nobody feel sorry for me.  But I just want a fair trial.  And that was my concern to them about these papers and people being from Santa Rosa County.  And I know some of these people –

THE COURT:   We asked them whether they knew you, whether they knew anything about any of the other witnesses or anything.  And they all said no.

MISS HELGESEN:    And, Your Honor, I even double questioned them about Joseph Lowery thinking that maybe they had heard the news.  And I asked again is everybody sure you've never heard of Joseph Lowery.  And nobody raised their hands.

THE COURT:    Right.

(Defense counsel confers with client)

THE COURT:    And I think that the questions were asked by counsel whether they knew you or any other witnesses.

THE DEFENDANT:    Well, I didn't hear her ask the one about them seeing the news, but I heard her ask if she just knew them.

MISS HELGESEN:    About what, I can't –

THE DEFENDANT:    About the news.  Just heard her ask if they just knew them.

MISS HELGESEN:    I think to bring up has anybody noticed these people in the news would be problematic –

THE DEFENDANT:    Well, I thought that you just said that you asked them about the news or something.

MR. GARRETSON:    No.

THE COURT:    No.  Whether they had -- knew of Joseph Lowery or any of the other witnesses, and nobody indicated -- and I think it was asked twice by Miss Helgesen.  And they all indicated they did not know you, nor any of the other witnesses.  So I don't have any indication that they know anything about this.  And we are not talking about the whole spree, but we're just talking about that one home.

THE DEFENDANT:    Yes, sir.

MISS HELGESEN:    And I've instructed all of my witnesses to only talk about that one house.

THE COURT:    *So are we satisfied then to go forward as we are?*

THE DEFENDANT:    *Yes, sir.*

MISS HELGESEN:    And we are not backstriking or anything?

MR. GARRETSON:    Right.

MISS HELGESEN:    *And we are just keeping our jury?*

> MR. GARRETSON:   *Right.*
>
> THE COURT:   *And that's okay with you, Mr. Kimmons?*
>
> THE DEFENDANT:   *Yes.*
>
> THE COURT:   Okay.  So we are ready to call the jury in?
>
> HISS HELGESEN:   If I can quickly -- I have marked some of the photographs that I plan on introducing.  I am not introducing all of them and you are you [sic] free to look at all of them.
>
> (Off the Record)
>
> THE COURT:   Okay.  Bring the jury in.

(Ex. B, pp. 3-9) (emphasis added).

The Rule 3.850 court rejected petitioner's claim that counsel should have moved to strike Ms. Jurey.  It found that counsel had in fact moved to strike her for cause but the motion was denied because the trial court did not accept counsel's argument that there had been a showing sufficient to support a for cause strike (ex. H, p. 3).  The court further found that the transcript of jury selection showed that any claim of bias had been refuted.

The above-quoted excerpt from the transcript  fully supports the state court's ruling.  Counsel did move to strike Ms. Jurey for cause, the court denied the motion, and counsel withdrew the motion for the obvious reason that it was not well taken.  Counsel could have used a peremptory strike, but did not.  However, it was abundantly clear on the morning trial was to commence that there were two alternates available, and counsel would have been allowed to back-strike Ms. Jurey if he or the petitioner felt there was any reason to do so.  Counsel was satisfied, and petitioner agreed without stating any further reservation.

Petitioner has thus failed to show that counsel's performance was deficient. He also cannot show that counsel's actions were prejudicial.  Ms. Jurey was elected foreperson of the jury that convicted the petitioner, but that proves nothing. Petitioner has not presented any evidence to support his conclusory statements that

Ms. Jurey's presence on the jury had anything to do with bias or an unfavorable result.  The evidence against petitioner was substantial, and defense counsel really had little to work with other than alibi witnesses, whom the jury disbelieved. Petitioner has failed to show either deficient performance or prejudice.  Thus, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

> ii.  <u>Ineffective assistance of counsel - filing defective appeal.</u>  (Ground 2 of petition).

Petitioner next contends, correctly, that his attorney filed a defective notice of appeal by notifying the appellate court that he was appealing only petitioner's sentence (ex. G, p. 88).  However, the error was discovered, petitioner filed an amended notice and the appellate court allowed the appeal to go forward (*id.* at 89). The Rule 3.850 court so noted, and found that petitioner had failed to show prejudice.  In his reply here petitioner agrees that he suffered no prejudice, but points to this as an overall indicator that his counsel was ineffective (doc. 14, p. 4). Regardless, without a showing of prejudice, petitioner is not entitled to federal habeas relief on this claim, and the writ should not issue.

> iii.  <u>Ineffective assistance of counsel - failure to depose witnesses.</u> (Ground 3 of petition).

Petitioner next contends that his attorney failed to depose witnesses, and was surprised by their testimony at trial, all to petitioner's detriment.  He says that his alibi witnesses, Donald Kimmons and Dana Walker "told two different stories." (Doc. 1, p. 8).  In his Rule 3.850 motion petitioner put a little more flesh on this claim by stating that defense counsel failed to take the deposition of these witnesses but that the prosecutor did.  He then pointed to Donald Kimmons' testimony at trial that he, Dana Walker, and petitioner were at Donald's house or were fishing all day, and that in the evening they all watched TV and then spent the night at Donald's trailer (ex. B, pp. 95-96).  Dana testified that they fished all day, but that after they returned

to Donald's trailer she and petitioner left, and did not return until 11:30 that night (ex. G, p. 113-114).  Petitioner contends that by taking the witnesses' depositions pre-trial, this damaging inconsistency could have been avoided.

The Rule 3.850 court found that the state took the depositions of the two defense witnesses, that defense counsel was present and cross-examined them, and that the witnesses' testimony at trial was consistent with their testimony during their depositions, so there were no surprises  (ex, H, p. 75-76).  The court thus concluded that petitioner's allegation of counsel failing to investigate these witnesses' stories prior to trial was refuted by the record.  The court further held that petitioner had failed to show any manner in which the purported differences in testimony could have been rehabilitated effectively, noting that counsel minimized the differences in the witnesses' testimony during summation (*id.*; ex. B, pp. 138-39).  The court therefore found that petitioner failed to establish deficient performance or prejudice.

The Rule 3.850 court's findings are amply supported by the record.  The transcripts of the depositions are in the record (ex. H, pp. 90 - 137).  Also, this court knows that a party rarely, if ever, takes the deposition of his own witnesses, and that if generally favorable witnesses give differing testimony on unimportant details,[3] there is nothing that can be done about it.  As the Rule 3.850 court noted, petitioner offers no solution to the latter problem.   Petitioner has not shown deficient performance or prejudice.  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

      iv.      **Ineffective assistance of appellate counsel - failure to raise pre-trial publicity.  (Ground 5 of petition).**

Petitioner's final ground of ineffective assistance concerns pre-trial publicity.  The factual background for this claim was touched upon the morning trial began,

---

[3]Since the homeowners whose home was burglarized returned home after work that day, even the state did not argue that petitioner could have committed the crime while he and Dana were gone from Donald's trailer.

quoted at length above.  In essence, petitioner contends that there were many articles in the local newspaper concerning a string of burglaries, and that he was erroneously associated with one in which some victims were held at gunpoint.  Now he says that his appellate counsel should have raised the issue on direct appeal. This issue was raised in a petition for habeas corpus in the appellate court seeking a belated appeal.  The state court denied the petition without written opinion.

Petitioner claims appellate counsel should have made the pre-trial publicity issue a ground for appeal.  However, it is well settled that a matter can be raised on appeal only if it is preserved at trial, usually by motion or objection directed at the objectionable matter. *Wright v. State*, 857 So.2d 861, 877 (Fla. 2003) (holding that a claim of ineffective assistance of appellate counsel cannot be considered in a post-conviction proceeding if the error that appellate counsel is accused of not pursuing could have been raised on direct appeal, but was not preserved during the trial). Here the petitioner's "concerns" were raised at trial, but trial counsel did not move for a change of venue or otherwise seek to strike any juror on the basis of pre-trial publicity.  Indeed, as the language from the transcript quoted above shows, there was a thorough discussion of the newspaper articles, but in the end petitioner accepted the jury.  Consequently, any error in the trial was not preserved, and appellate counsel cannot be faulted for not appealing an issue that was not preserved at trial.  *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995) (holding that where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

2.    Petitioner's Life Sentence Is Illegal.  (Ground 4 of petition).

Petitioner states this claim as follows: "The sentence of life imprisonment is

illegal and petitioner should not be convicted of armed burglary and grand theft firearm." (Doc. 1, p. 5). In his statement of facts supporting this claim, he argues, "The life sentence under the PRR [Florida's Prison Release Reoffender Act (PRRA), Fla. Stat. § 775.082(9)] is unconstitutional. Additionally, petitioner should not have been convicted of armed burglary and grand theft firearm when the theft of the gun was used to convert the burglary into an armed burglary. The PRR is inapplicable as referenced above." (*Id.*). Petitioner asserts that he raised this claim in his Rule 3.850 motion (*id.*). He additionally argues in his reply that his life sentence is unconstitutional as violative of the Sixth Amendment because the trial court "went outside the criminal punishment code and sentenced petitioner to natural life on facts that were not found beyond a reasonable doubt by a jury of his peers." (Doc. 14, p. 4) (citing *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)).

In petitioner's Rule 3.850 motion, he presented a claim identical to the one asserted in the instant petition. (ex. G, p. 7). He did not, however, present to the state court the additional issue raised in his reply - the Sixth Amendment argument based on *Blakely*. The Rule 3.850 court denied relief (ex. H). Thus, although petitioner presented *a* federal claim concerning his sentence in state court, it is not clear that *all* aspects of the claim he now raises were properly presented. Even so, no aspect of the instant claim warrants federal habeas relief.

First, the application of the sentencing statute to the facts of petitioner's case is purely a matter of state law. Federal habeas relief is available to correct only constitutional injury. 28 U. S. C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73

L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508  (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).

State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Estelle*, 502 U.S. at 352, 110 S.Ct. 668.  The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent.

Petitioner contends that recent Supreme Court cases on proportionality apply here, but this claim is meritless.  The Court has reviewed sentences for proportionality where the underlying conviction is minor but, typically because of a "three strikes" law, carries a lengthy, often life, sentence.  *See, e.g.*, *Ewing v. California*. 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (holding that a sentence of twenty-five years to life is not unconstitutional even though the underlying crime involved the theft of three golf clubs, where the defendant was on parole at the time and had numerous prior convictions involving theft); *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (3003) (holding that a sentence

of twenty-five years to life is not unconstitutional where the conviction was for two instances of theft involving $150 in merchandise but where defendant had three prior felony convictions).  However, these proportionality rulings are limited, and relate only to cases in which the sentence and the underlying crime are vastly at odds.

This case did not involve a misdemeanor theft or anything like it.  Petitioner was convicted of armed burglary, which is not a misdemeanor.  It is a first degree felony in Florida, and carries a maximum sentence of life. Fla. Stat. § 810.02(2)(b). Under the PRRA, if a defendant has been released from prison within three years of the new offense, the life sentence becomes mandatory.  Fla. Stat. § 775.082(9)(a)3a. Petitioner qualified for sentencing under the PRRA, which he does not contest, and was so sentenced.  There is no Supreme Court precedent to support petitioner's argument that under this set of facts he should be entitled to relief based on proportionality.

Petitioner's second basis for relief should also be rejected.  Petitioner contends that his mandatory life sentence was imposed based on facts - his prior imprisonment and date of release - that were not determined by a jury.  In the seminal case of *Apprendi v. New Jersey*,[4] the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63.  *See also Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 2432, 153 L.Ed.2d 556 (2002) (concluding under *Apprendi* that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.").  However, *Apprendi* and its progeny, *Blakely v. Washington*,[5] and *United States v. Booker*,[6] do not apply retroactively on collateral review.  *Varela v. United States*, 400

---

[4] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).

[5] *Blakely v. Washington*,  542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[6] *United States v. Booker,* 542 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

F.3d 864, 867-68 (11th Cir.), *cert. denied*, 126 S.Ct. 312, 163 L.Ed.2d 269 (2005). Therefore, this argument was waived when it was not raised on direct appeal. Moreover, petitioner's prior conviction and release are exactly the type of things that *Apprendi* indicated *did not* need to be determined by a jury.

Therefore, to the extent that the state court's decision rested on federal law, its ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  To the extent the state court did not adjudicate the merits of all federal law aspects of the claim presented here, federal habeas relief should be denied because *de novo* review reveals there is no basis for relief.

As a final note, the court addresses petitioner's argument that he should not have been convicted of armed burglary and grand theft firearm "when the theft of the gun was used to convert the burglary into armed burglary." (Doc. 1, p. 5).  Petitioner raised this claim in his Rule 3.850 motion, characterizing it as a claim of insufficient evidence in regard to the firearm (ex. G, pp. 2, 28-32).  The Rule 3.850 imposed a procedural bar because the claim could have been raised on direct appeal but was not (ex. H, p. 6).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[7] thereby giving the State the "'opportunity to pass upon and correct'

---

[7]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have

prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Applying the foregoing to the instant case, the undersigned finds that this aspect of petitioner's claim (that there was insufficient evidence to support the armed burglary conviction) was rejected by the Rule 3.850 court based on the independent and adequate state ground of procedural bar.  The procedural bar imposed is firmly established and a regularly followed state practice in cases such as petitioner's.  *Teffeteller v. State*, 734 So.2d 1009, 1016 (Fla. 1999) (holding that substantive claims raised by post-conviction relief movant were procedurally barred because they could have been raised on direct appeal); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  Therefore, this court should consider the claim procedurally defaulted.  Petitioner has made none of the requisite showings to excuse his default; thus, the court should not review the merits of the claim.

Accordingly, it is respectfully RECOMMENDED that the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. James D. Kimmons* in the Circuit Court of Santa Rosa County, Florida, case no. 99-114-CFA, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of August, 2006.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).